Richard J. McCord, Esq.
Certilman Balin Adler & Hyman, LLP
Counsel to the Chapter 11 Trustee
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
Phone: 516-296-7000
Fax: 516-296-7111

**Hearing Date: August 8, 2019**
**Time: 11:00 a.m.**
**Objection Date: August 1, 2019**
**Time: 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

NORTHERN BOULEVARD AUTOMALL, LLC,
d/b/a LONG ISLAND CITY VOLKSWAGEN,

                              Debtor.

-----------------------------------------------------------X

Chapter 11
Case No.:  19-41348-nhl

## CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING FORM AND MANNER OF NOTICES; (II) SCHEDULING AN AUCTION AND SALE HEARING; (III) APPROVING THE SALE OF SUBSTANTIALLY ALL THE ASSETS OF THE DEBTOR, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (IV) ASSUMPTION AND ASSIGNMENT OF CONTRACTS; AND (V) GRANTING RELATED RELIEF

Richard J. McCord, as Chapter 11 Trustee ("Trustee") of Northern Boulevard Automall, LLC

d/b/a Long Island City Volkswagen, (the "Debtor") hereby files this *Motion for Entry of an Order*

*(I) Authorizing and Approving Form and Manner of Notices; (II) Scheduling an Auction and Sale*

*Hearing; (III) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All*

*Liens, Claims, Encumbrances, and Interests; (IV) Assumption and Assignment of Contracts; and (V)*

*Granting Related Relief* (the "Motion") seeking the entry of an orders, (a) approving form and

manner of notices; (b) scheduling an auction and sale hearing; (c) approving the sale of substantially

all of the assets of the Debtor free and clear of all liens, claims, encumbrances and interests pursuant

1

to an asset purchase agreement; (d) allowing for the assumption and assignment of contracts; and (e) granting related relief.  In support of this Motion, the Trustee respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.      After considering available options within the context of the current status of the Debtor's operations, the Trustee determined in his business judgment to conduct a competitive bid- and sale process for the orderly sale of all or substantially all of the Debtor's assets, including the Dealership (the "Assets") under §363(b) and (f) of the Bankruptcy Code and transition of the Debtor's Dealership (defined below) to a new ownership group.

## II.
## JURISDICTION

2.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The legal predicates for the relief requested in this Motion are §§ 105(a), 363, 365, 503(b), 507(a), 541, and 1106 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.
## BACKGROUND

**A.      Bankruptcy Case and Efforts to Sell**

4.      On March 7, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned bankruptcy case in the United States Bankruptcy Court for the Eastern District of New York (the "Court") and

creating its bankruptcy estate (the "Estate").  The Debtor operates a Volkswagen dealership with two (2) locations (a showroom location and a parts and service center location) (the "Dealership").

5.      On April 9, 2019, the Court entered the Order Authorizing the Appointment of Chapter 11 Trustee.

6.      On April 11, 2019, the Trustee was appointed by the Office of the United States Trustee and the Order approving the Trustee's appointment was entered by the Court.

7.      Pursuant to Court Order dated April 24, 2019, the Trustee retained MYC & Associates, Inc., as Business Broker and Custodian, *nunc pro tunc* to April 11, 2019.

8.      The Trustee has begun a marketing process of the Assets and the Dealership, which includes and will include the following:

    a.  Compiling relevant documents about the Dealership, financial status, and operations;

    b.  Negotiating and executing non-disclosure agreements with interested parties;

    c.  Marketing the Debtor on an informal basis to prospective buyers;

    d.  Requesting manufacturer assistance from Volkswagen Group of America in locating a buyer;

    e.  Having numerous informal discussions with prospective bidders regarding the Dealership and bidder due diligence;

    f.  Reviewing a draft APA  to be provided to any party interested in making a Qualified Bid who executes a nondisclosure agreement with the Trustee; and

    g.  Analyzing bids, negotiating the form buy-sell agreement, and securing for the Debtor the highest or best offer(s) for the Assets.

    h.  the Trustee also seeks authority to publish notice of the Sale and of the Sale Hearing.

9.     The Trustee and his Business Broker have each spent substantial time communicating with parties interested in the Assets and the Dealership. Any party interested in the proposed Sale process should contact the Trustee's counsel, Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, New York 11554, telephone number: 516-296-7000, Attn: Richard J. McCord, Esq. or Robert D. Nosek, Esq.; emails: rmccord@certilmabalin.com and rnosek@certilmanbalin.com.

10.     All parties interested in buying the Assets and the Dealership should contact the Trustee's Business Broker, MYC & Associates, Inc. ("MYC"), located at 1110 South Avenue, Suite 22, Staten Island, New York 10314, phone: (347) 273-1258; email: my@myccorp.com; vm@myccorp.com.

**B.     The Debtor's Business and Assets and Significant Obligations.**

11.     The Debtor, a New York limited liability company, owns and operates the Dealership pursuant to a franchise agreement (the "Franchise Agreement") by and between the Debtor and Volkswagen Group of America, Inc. ("VWGoA"), the manufacturer. The Dealership is located at 56-15 Northern Boulevard, Woodside, New York 11377 (the "Showroom"), and 54-20 Broadway, Woodside, NY 11377 (aka 33-20 55th Street) (the "Service Department") (collectively, the "Premises") and operates under the name "Long Island City Volkswagen." The Debtor sells and services new and used vehicles from the Premises. The Debtor also stores new vehicles at 40-22 College Point Blvd, Flushing, NY 11354-5115 (the "New Vehicle Lot").

**Leases for Premises and New Vehicle Lot**

12.     Since it began operations, the Debtor has occupied the Showroom, as tenant, with 142 North LLC, as lessor (the "Showroom Landlord").

13.     The Debtor also occupies the Service Center, as a tenant, with 54 Bway LLC, as

4

lessor (the "Service Center Landlord") (the Showroom Landlord and the Service Center Landlord are collectively referred to herein as the "Landlords").

14.    One of the Debtor's members, Spyro Avdoulos, owns and/or controls the Landlords of the Premises.    The Landlords and Mr. Avdoulos have represented to the Debtor and the Court that they will cooperate with the Trustee's sale efforts in all reasonable respects and that they will entertain all lease offers from Qualified Bidders provided the offers are for fair market rent for the Premises.    Prospective purchasers who desire to maintain the dealership at the same Premises, should submit their offers/bids with the market rent they are willing to pay for the Premises.    The Bid Procedures provide for this requirement.    There may be an opportunity for the assumption/assignment of existing leases for the Premises in which event, the Trustee will discuss any cure amounts with prospective purchasers.

15.    The Debtor leases the New Vehicle Lot from MP Flushing, LLC.    Upon information and belief, the Debtor is currently occupying the New Vehicle Lot on a month-to-month basis under which it is required to pay $7,500.00 per month (approximately $100.00/mo per car).

**Security Interest of VCI**

16.    In June 2016, the Debtor and VCI entered into certain loan documents contemporaneously with the commencement of the Dealership's operations (the "VCI Loan Documents"). Under the VCI Loan Documents, VCI asserts that it provided financing that allowed the Debtor to purchase new and used vehicles necessary to operate the Dealership. VCI asserts a first priority security interest in all of the Debtor's assets and filed a Form UCC-1 financing statement to perfect that security interest.

17.    VCI asserts that as of the Petition Date, the Debtor is obligated to VCI under the VCI Loan Documents in the sum of approximately $7 million (the "VCI Debt") with approximately $900,000 of said obligation alleged to be "out of trust."

18.    The Trustee is in the process of reviewing the Loan Documents and determining the extent, validity and priority of the VCI Debt and liens.

19.    Absent the sale of Debtor's Dealership Assets, it is unlikely that the Debtor will be able to create sufficient revenue to repay VCI and other debts in a reasonable time. The Trustee believes no further purpose can be served in maintaining the Debtor's operations for a prolonged period and incurring the extra cost and expense of seeking to reorganize the Debtor's business pursuant to a confirmed chapter 11 plan of reorganization. The Trustee strongly believes that the Debtor's Dealership and related assets must be sold as quickly as possible in order to preserve the value of existing assets.

## IV.
## RELIEF REQUESTED

20.    By this Motion, the Trustee seeks approval of (a) the competitive bid process and procedures outlined in and attached to the proposed bid procedures order ("Bid Procedures Order"); and (b) the sale of the Assets and Dealership to the highest or best offer(s).

21.    Specifically, the Trustee seeks entry of an order substantially in the form of the Bid Procedures Order, which the Bid Procedures and the Bid Procedures Order is attached hereto as **Exhibit A** . The Notice of Settlement is annexed hereto as **Exhibit B**:

(a)    approving the Bid Procedures and Bid Procedures Order, in the form attached as **Exhibit A**;

(b)    approving the form and manner of notice of the hearing to approve the Sale (the "***Sale Hearing***," and the notice thereof, the "***Sale Notice***") attached as **Exhibit 2** to the Bid Procedures Order and incorporated by reference herein;

6

(c)      subject to modification as necessary, fixing certain dates and deadlines relating to the Bid Procedures, the auction, the Sale Hearing, and filing of certain related objections:

i.       **Assumption and Assignment Notice Deadline:  May 7, 2019**, as the deadline by which the Trustee will file with the Court a notice identifying the proposed cure amounts for all unexpired leases and executory contracts;

ii.      **Bid Deadline**:  **5:00 p.m. prevailing Eastern Standard Time on June 5, 2019,** as the deadline (the "***Bid Deadline***") by which Potential Bidders/Qualified Bidders (as defined in the Bid Procedures) must deliver written copies of their bidding materials consistent with the Bid Procedures to the Trustee and others entitled to receive such copies;

iii.     **Auction:  11:00 a.m. prevailing Eastern Standard Time on August 7, 2019,** as the date on which an auction for the Assets (the "***Auction***"), if one is necessary, will commence at Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, New York 11554;

iv.      **Sale Objection Deadline:  4:00 p.m. prevailing Eastern Standard Time on August 1, 2019,** as the deadline (the "***Sale Objection Deadline***") by which objections, if any, to the entry of the order approving the Sale Order (defined below) must be filed and served consistent with the Bid Procedures; and

v.       **Sale Hearing: August 8, 2019 at 11:00 am.** on which the Sale Hearing will be held in the United States Bankruptcy Court; and

(d)      granting related relief.

22.      Further, the Trustee seeks entry of an order (the "***Sale Order***"), approving (a) the sale of substantially all of the Assets free and clear of all liens, claims, encumbrances, and interests, together or in one or more asset packages (an "***Asset Package***"), and (b) the assumption and assignment of certain executory contracts and unexpired leases related to and utilized in connection with the Assets to the Qualified Bidder who submits the highest or best bid in accordance with the Bid Procedures (either, the "***Successful Bidder***").  The Sale Order will be negotiated separately at

the Auction and circulated to parties in interest no less than fourteen (14) days prior to the Sale Hearing.

## V.
## FACTUAL BACKGROUND

23.    The Trustee and his retained professionals have analyzed the Debtor's circumstances and have discussed them with various interested parties, including, but not limited to, VCI, VWGoA, the Landlords and the Debtor's management and members, and have decided that the prompt sale of the Dealership and its assets is in the best interests of creditors and the estate.

24.    The Trustee believes that the entire process of obtaining the necessary approval from the Bankruptcy Court of the sale procedures delineated herein, the marketing of the Dealership franchise to solicit higher or better offers, review of the Dealer Application (defined below) and related documents by VWGoA, and a sale should take approximately two months from the entry of the Order approving the relief requested herein.

## VI.
## BASIS FOR THE RELIEF REQUESTED

**A.    The Court Should Approve the Proposed Bid Procedures.**

25.    The Bid Procedures are attached to the Bid Procedures Order, which is annexed hereto in **Exhibit A** to this Motion.  The Court has already authorized the Trustee to settle the Bid Procedures Order on seven (7) days' notice.  Any person interested in making an offer to purchase the Assets must comply with the Bid Procedures when they are approved by the Court.  Generally, the Bid Procedures provide for, among other things:

> (a) If more than one Qualified Bid is received by the Bid Deadline, then the Trustee shall conduct the Auction and select the highest or otherwise best Qualified Bid or Qualified Bids for the Assets and the Dealership as the Successful Bid(s).

(b) The successful purchaser's obligation to close will be subject to the following conditions, in addition to the customary conditions in a "Section 363" sale, to be set forth in the Terms and Conditions of Sale:

(1)   Selection by the Trustee and determination by the Court that the Highest Offeror's offer for the Dealership Assets (including the Purchaser) is the highest or the best offer;

(2)   The completion of a VWGoA Dealer Agreement Application and related forms to be provided to the Debtor by VWGoA;

(3)   Acceptance by VWGoA of the Highest Offeror as an approved franchisee;

(4)   Entry of a Sale Approval Order (defined below); and

(5)   The Sale Approval Order shall provide that (a) the sale is also free and clear of any encumbrances, and (b) the fourteen (14) day stay following entry of the Sale Approval Order shall be waived

(6)   Parties are referred to and encouraged to read the proposed Bid Procedures in their entirety.

**B.     The Sale Is an Exercise of Sound Business Judgment and Should Be Approved.**

26.     Section 363 of the Bankruptcy Code authorizes a trustee to sell assets of the estate other than in the ordinary course of business and provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b)(1). Courts approve proposed sales of property pursuant to §363 if the transaction represents the reasonable business judgment of the Trustee. *See Inst. Creditors of Cont'l. Air Lines, Inc. v. Cont'l. Air Lines, Inc. (In re Cont'l. Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty … there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363 … is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons."); *In re Delaware & Hudson Rv. Co.*, 124 B.R. 169,

9

176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason"

justifying the preconfirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr.

D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a Chapter 11

case are "that the proposed sale is fair and equitable, that there is a good business reason for

completing the sale and the transaction is in good faith"); *see also Comm. of Equity Security Holders

v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus. Inc. v. McClung*,

789 F.2d 386, 391 (6th Cir. 1986).

27.    If a valid business justification exists for the sale, as it does in this case, the Trustee's

decision to sell property out of the ordinary course of business enjoys a strong presumption "that the

decision maker acted on an informed basis, in good faith and in an honest belief that the action taken

was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y.

1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re ASARCO,

L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible

and encourages discretion."); *GBL Holding Co.v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254

(Bankr. N.D. Tex. 2005) ("Great judicial deference is given to the [t]rustee's exercise of business

judgment" [in approving a proposed sale under section 363].). Therefore, any party objecting to the

proposed sale must make a showing of "bad faith, self-interest or gross negligence." *In re Integrated

Res., Inc.*, 147 B.R. at 656 (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1985)); *see

also Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re JohnsManville Corp.)*, 60

B.R. 612, 616 (Bankr. S.D. N.Y. 1986) ("Where the debtor articulates a reasonable basis for its

business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally

not entertain objections to the debtor's conduct.").

28.     In determining whether a proposed § 363(b)(1) sale satisfies the "business judgment standard," courts consider the following: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the price is fair and reasonable; and (d) whether the parties have acted in good faith. *See, e.g.*, *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987). All of those factors are satisfied here.

29.     Sound business justification exists for the Sale. The Debtor's liquidity is currently limited, and the Trustee faces challenges to fix that limitation in the near future. Accordingly, at this time, the proposed orderly sale of the Assets is the only viable alternative to maximize value of the Assets and the Dealership. The Trustee submits that the proposed Sale of the Assets is supported by a number of sound business reasons, and the facts support an expeditious but regulated and controlled sale of the Assets to preserve value.

30.     Marketing efforts will continue, and the Trustee will provide adequate and reasonable notice of the Sale. Notice will be given to interested parties of the Bid Procedures, the Auction, and the date of the Sale as required in the Bid Procedures Order. The Trustee submits that that such notice constitutes adequate and reasonable notice to interested parties, as set forth in the Bid Procedures Order, under the circumstances and should be approved.

31.     Under the Bid Procedures, the Trustee will have acted in good faith to canvas the market to ensure that the ultimate sales price for the Assets is the highest value possible. The Trustee submits that the approval of the proposed Sale is appropriate and warranted under § 363 of the Bankruptcy Code.

**C.    The Sale of the Assets Will Be Free and Clear of Liens, Claims, Encumbrances, and Interests.**

32.     Section 363(f) of the Bankruptcy Code authorizes a trustee to sell assets free and clear

of liens, claims, interests, and encumbrances in property of an entity other than the estate if

>   (a) applicable non-bankruptcy law permits a sale of such property free and
>       clear of such interest;
>
>   (b) such entity consents;
>
>   (c) such interest is a lien and the price at which such property is to be sold
>       is greater than the value of all liens on such property;
>
>   (d) such interest is in *bona fide* dispute; or
>
>   (e) such entity could be compelled, in a legal or equitable proceeding, to
>       accept a money satisfaction of such interest.

11 .S.C. § 363(f).

33.     Because § 363(f) of the Bankruptcy Code is drafted "in the disjunctive," satisfaction

of any one of its five (5) requirements will suffice to permit the sale of the Assets "free and clear"

of liens and interests. *In re Nature Leisure Times, LLC*, 06-41357, 2007 WL 4554276, at *3 (Bankr.

E.D. Tex. Dec. 19, 2007); *see also Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In

re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code

section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and

clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met); *In re

Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D. N.Y. Mar. 6, 1992)

("[S]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if

any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8

(Bankr. S.D. N.Y. 1986). The Court also may authorize the sale of a debtor's assets free and clear

of any liens pursuant to § 105 of the Bankruptcy Code, even if § 363(f) did not apply.  *See Matter

of Selby Farms*, 15 B.R. 372, 375 (Bankr. S.D. Miss. 1981) ("The power of the Bankruptcy Court to

sell property free and clear of liens has long been recognized." (citing *Van Huffel v. Harkelrode*, 284

U.S. 225, 227-28 (1931))); *In re Trans World Airlines. Inc.*, No. 01-0056, 2001 WL 1820325, at *3

(Bankr. D. Del. Mar. 27, 2001) ("Bankruptcy courts have long had the authority to authorize the sale

of estate assets free and clear even in the absence of § 363(f)."); *see also Volvo White Truck Corp.*

*v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D.

Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable

powers when necessary to carry out the provisions of Title 11.").

34.    With regard to the sale of the Assets, the Trustee believes that at least one of the tests

in § 363(f) will be satisfied.  In particular, the Trustee believes that §§ 363(f)(2) and (f)(5) will be

satisfied first, because (a) VCI and any other party asserting a lien on the Assets to be sold will have

consented to this Motion and (b) absent such consent, VCI and any other party asserting a lien on

the Assets to be sold could be compelled to accept a monetary satisfaction of its security interest in

the Assets.  Further, all liens of any secured party against the Assets will attach to the proceeds from

the sale of the Assets to the same extent and priority as such liens exist in the Assets.

### D.    The Assumption and Assignment of Contracts Is Authorized By § 365 of The Bankruptcy Code

35.    §§ 365(a) and (b) of the Bankruptcy Code authorize a trustee to assume, subject to

the court's approval, executory contracts or unexpired leases of a debtor. In turn, §365(b)(1) of the

Bankruptcy Code codifies the requirements for assuming an unexpired lease or executory contract

of a debtor, providing as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> A)    cures or provides adequate assurance that the trustee will promptly cure, such default …;

B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

C)   provides adequate assurance of future performance under such contract or lease.

36.    In analyzing whether the assumption or rejection of an executory contract or unexpired lease pursuant to § 365(a) should be approved, courts also apply the "business-judgment" test, which requires a determination that the requested assumption or rejection be "advantageous to the estate and the decision be based on sound business judgment."[1] In making this determination, courts generally will not second-guess a trustee's business judgment concerning the assumption of an executory contract.[2]

37.    Here, the Trustee's assumption and assignment to the Successful Bidder after an Auction meets the business-judgment standard and satisfies the requirements of § 365 of the Bankruptcy Code. First, the scope of the subject Contracts is focused and reasonable. The subject Contracts are the contract rights, leases of dealership locations, and leases of real and personal property related to the Dealership that may be sold as a part of the Sale. As mentioned, the Debtor's liquidity is challenged, and the Sale transactions contemplated by this process will preserve and maximize value of the Assets and the Dealership. Because the Trustee may not be able to obtain

---

[1] See *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) (holding that, when deciding whether to grant a motion to assume, a court must put itself in the trustee's position and determines whether such assumption would be a good decision or a bad one).

[2] *See e.g.*, *In re Paolo Gucci*, 193 B.R. 411, 414 (S.D.N.Y. 1996); *Sharon Steel Corp. v. National Gas Fuel Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *In re III Enter., Inc.*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject an executory contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment – a standard which we have concluded many times is not difficult to meet.").

such preservation and maximization without the assumption and assignment of some or all of the subject Contracts, the assumption of these subject Contracts is a sound exercise of the Trustee's business judgment.  At this time, assumption and assignment of any contracts is unknown and will depend on which Contracts, if any, a Potential Bidder desires to include in its bid.

38.    Further, a trustee may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with § 365(a), and provides adequate assurance of future performance by the assignee, "whether or not there has been a default" under the agreement. 11 U.S.C. § 365(f)(2).

39.    Here, in the event there are any unexpired leases or executory contracts to be assigned, the Trustee will identify such leases and contracts and provide for any cure amounts related thereto.  Prospective Bidders are not required to purchase such agreements but must identify any of those agreements that they seek to acquire.  All monetary defaults that must be cured under § 365(b) as a pre-condition to the assumption and assignment of the subject Contracts will be cured at the proposed closing or the Trustee will secure an agreement for the cure of same through the sale process to the extent permitted.

40.    By no later than May 30, 2019, which is well enough in advance of the proposed Sale hearing, the Trustee will file with the Court and serve on each non-debtor party to an executory contract or unexpired lease a notice setting forth the amount of cure owed thereunder according to the Debtor's books and records (the "***Cure Notice***").  The Cure Notice shall state the cure amount that the Trustee believes is necessary to assume such contract or lease pursuant to §365 of the Bankruptcy Code (the "***Cure Amount***"), and notify each non-debtor party that such party's lease or contract may be assumed and assigned to the successful bidder identified at the conclusion of the Auction, if any.

41.     The Trustee will request that this Court order that, no later than seven (7) days prior to the Sale Hearing, any objection to the Cure Amount must be filed with the Court (the "***Cure Amount Objection Deadline***").  Any objection to the Cure Amount must state with particularity what alternative cure amount the non-debtor party believes is required with appropriate supporting documentation and the legal and factual bases for that belief.  If no objection is timely received, the Bid Procedures Order will provide that Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any executory contract, unexpired lease, or other document that exists on the date of the Cure Notice; the nondebtor party to the executory contract or unexpired lease shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped, and enjoined from asserting or claiming that any additional amounts are due or other defaults exist under the unexpired lease or executory contract, that conditions to assignment must be satisfied or that there is any objection or defense to the assumption and assignment of such contract or lease, including any argument that there exist conditions to assumption and assignment that must be satisfied or that any required consent to assignment has not been given. Any objections to the Cure Notice and Cure Amounts filed by the Cure Amount Objection Deadline shall be heard at the Sale Hearing.

42.     At the Sale Hearing, the Trustee will demonstrate that the Successful Bidder has the ability to continue performance under any Assigned Contract. The Trustee submits that the assumption and assignment of the Assigned Contracts to be disclosed by May 7, 2019, should be approved.

43.     To assist in the assumption and assignment of the Contracts, the Trustee requests that the Court enter an order providing that any anti-assignment provisions, if any, in the Assigned Contracts shall not restrict, limit, or prohibit the assumption and assignment of the Assigned

Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of § 365(f) of the Bankruptcy Code. § 365(f)(1) of the Bankruptcy Code permits a debtor-in-possession to assign unexpired leases and executory contracts free from such anti-assignment restrictions, providing, in pertinent part, that:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . .
> . .

11 .S.C. § 365(f)(1).

44.     By operation of law, § 365(f)(1) invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease.[3] § 365(f)(3) goes beyond the scope of § 365(f)(1) by prohibiting enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof.[4]

45.     Other courts have recognized that provisions that have the effect of restricting assignments also cannot be enforced.[5] Accordingly, the Trustee requests that any anti-assignment provisions be deemed not to restrict, limit, or prohibit the assumption and assignment of the

---

[3] See, e.g., Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.), 127 F. 3d 904, 910-11 (9th Cir. 1997) ("[N]o principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365.").

[4] See, e.g., In re Jamesway Corp., 201 B.R. 73 (Bankr. S.D. N.Y. 1996) (finding that § 365(f)(3) prohibits enforcement of any lease clause creating right to terminate lease because it is being assumed or assigned, thereby indirectly barring assignment by debtor; all lease provisions, not merely those entitled antiassignment clauses, are subject to court's scrutiny regarding anti-assignment effect).

[5] See In re Rickel Home Centers, Inc., 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f), courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions."); see also In re U.L Radio Corp., 19 B.R. 537, 543 (Bankr. S.D. N.Y. 1982) ("Any lease provision, not merely one entitled 'anti-assignment clause,' would be subject to the court's scrutiny regarding its anti-assignment effect.").

Assigned Contracts and be deemed and found to be unenforceable anti-assignment provisions within the meaning of § 365(f) of the Bankruptcy Code.

### E.    The Ultimate Purchaser Will Be Entitled to Protections as a Good-Faith Purchaser

46.    Bankruptcy Code § 363(m) states, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

47.    A sale to a good-faith purchaser cannot be avoided under § 363(m), unless the sale authorization was stayed pending appeal. *See* 11 U.S.C. § 363(m). Additionally, for the sale to be considered in good-faith, consideration must: (1) be fair and reasonable; (2) be the highest and best offer for the property, and; (3) constitute reasonably equivalent value, fair value, and fair consideration.

48.    The Trustee will show at the Sale Hearing that he negotiated with the Successful Bidder at arm's-length, in good faith, and in an effort to achieve the best offer for the Assets. As such, the Trustee will show that the Successful Bidder is entitled to the protections of a good-faith purchaser under § 363(m) of the Bankruptcy Code, and the sale of the Assets does not constitute an avoidable transaction pursuant to § 363(n).

49.    The purchaser of the Assets will have participated in a good faith manner if such prospective purchaser complies with the Bid Procedures and submits a Qualified Bid. An Auction conducted in accordance with the Bid Procedures will further ensure that the sale of the Assets will be the result of arm's length, good faith negotiations between the Trustee and each party submitting a Qualified Bid. The Bid Procedures, coupled with the prospect of an open Auction, definitively

preclude any conduct that would cause or permit the sale to be set aside under § 363(n) of the Bankruptcy Code.

50.     Finally, the Trustee reiterates that any agreement executed with or related to the sale of the Assets will provide substantial, essential value to the bankruptcy estate because it will facilitate an efficient liquidation for fair and reasonable consideration. *Mellon Bank, NA. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1991) (same), *cert. denied,* 503 U.S. 937 (1992); *see also Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors (In re R.M.I., Inc.)*, 92 F.3d 139 (3d Cir. 1996); *In re China Resource Prod. Ltd. v. Favda Intern., Inc.*, 856 F. Supp. 856, 866 (D. Del. 1994) (citing *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 792 (Del. Ch. 1992)). Through the Bid Procedures, exposure of the Assets will not be limited or constricted, but the Assets will instead be subjected to an open process, subject to review by the Court, that recognizes the rights of all parties-in-interest while providing the estate with reasonably equivalent value in exchange for the Assets.  The Trustee believes that the to-be-determined purchaser of the Assets is therefore a "good faith" purchaser within the meaning of Bankruptcy Code and will be entitled to the full protections afforded by § 363(m). Accordingly, the Trustee requests that the Sale Order contain findings and protections pursuant to Bankruptcy Code § 363(m).

### F.     Cause Exists to Eliminate Any Stay Imposed By The Bankruptcy Rules.

51.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006 provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

52.     The Trustee requests that any order approving this Motion (or authorizing a transaction to sell the Assets) be effective immediately, thereby waiving the 14-day stays imposed by Bankruptcy Rules 6004 and 6006. These waivers or eliminations of the 14-day stays are necessary for the Sale to close and the funding to be received as expeditiously as possible.  The Trustee respectfully submits that it is in the best interest of the Estate to close the Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Trustee requests that the Court eliminate the 14-day stays imposed by Bankruptcy Rules 6004 and 6006.

### G.    Notice.

53.     The Trustee will cause to serve copies of this Motion, together with the exhibits and notice of the Hearing by (i) the Court's electronic filing system on those parties receiving electronic notice by such system; (ii) first class United States mail, postage prepaid, and (iii) via electronic mail where possible, including, without limitation, on (a) the United States Trustee for the Eastern District of New York; (b) Volkswagen Credit, Inc. ("VCI") and its counsel; (c) Volkswagen Group of America ("VWGoA") and its counsel; (d) Landlords and their counsel, I the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (f) the Internal Revenue Service, (g) the Attorney General (NYS Dept. of Taxation and Finance); (h) all parties in interest and counsel having filed written requests for notice of appearance in this case; and (i) all creditors and parties in interest.

54.     The Trustee also seeks authority to publish notice of the Sale and of the Sale Hearing.

55.     The Trustee submits that such notice complies with the applicable requirements of the Bankruptcy Code and Rules, including the notice requirements of Bankruptcy Rules 2002 and 6004, and respectfully submits that no other or further notice is necessary.

**WHEREFORE**, the Trustee respectfully requests that this Court enter the Bid Procedures Order in substantially the form attached as **Exhibit A** and thereby:

(a)     approve the procedures for objections to this Motion;

(b)     schedule the Auction and the Sale Hearing:

(c)     approve the assumption and assignment of contracts; and

(d)     grant the related relief set forth herein.

Further, the Trustee respectfully requests at the conclusion of the Sale Hearing that this Court enter the Sale Order, thereby:

(a)     authorize and approve the sale of the Assets to the party or parties that timely submit the highest and best Qualified Bid in compliance with the Bid Procedures that, in the Trustee's business judgment, constitutes the highest or best offer, in either case, free and clear of all claims, encumbrances, liens, and other interests; and

(b)     for such related, other and further relief as is just and proper.

Dated: East Meadow, New York
     May 2, 2019

                **CERTILMAN BALIN ADLER & HYMAN, LLP**
                Counsel to the Chapter 11 Trustee

                By:    /s/ Richard J. McCord
                        Richard J. McCord, Esq.
                        90 Merrick Avenue, 9th Floor
                        East Meadow, New York 11554
                        (516) 296-7000