# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into as of July 31, 2019, by and between Respect Auto Queens II LLC as assignee of HG Respect Bronx Holding Corp., a New York corporation with its principal place of business at 56 Leonard Street #27AE, New York, New 10013 ("Purchaser"), Richard J. McCord, in his capacity as Chapter 11 Trustee of Northern Boulevard Automall, LLC d/b/a Long Island City Volkswagen  (the "Trustee") and Northern Boulevard Automall, LLC d/b/a Long Island City Volkswagen, a New York limited  liability company with its principal place of business at 56-15 Northern Boulevard, Woodside, New York 11377 ("Debtor", and collectively with the Trustee, the "Seller"). The Seller and Purchaser are sometimes referred to herein individually as a "Party" and collectively as the "Parties").

# RECITALS

WHEREAS, the Debtor is in a Chapter 11 reorganization proceeding in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court") in the case captioned In re Northern Boulevard Automall, LLC d/b/a Long Island City Volkswagen, Case No. 19-41348 NHL (the  "Bankruptcy Case");

WHEREAS, Debtor's principal business (the "Business") is the ownership and operation of a Volkswagen new and used motor vehicle dealership at 56-15 Northern Boulevard, Woodside, New York and a service and parts center at (collectively, the "Premises");

WHEREAS, Seller desires to sell certain of its assets to Purchaser, and Purchaser desires to purchase certain assets of Seller, on the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the Trustee has determined that it is advisable and in the best interests of Seller's bankruptcy estate to consummate the transactions provided for herein pursuant to the Sale Procedures Order and the Sale Approval Order (as such terms are defined below);

WHEREAS, the Parties desire to consummate the transactions contemplated by this Agreement as promptly as practicable after the Bankruptcy Court enters the Sale Approval Order approving such transactions; and

WHEREAS, the Parties are willing to make certain representations, warranties, covenants and agreements in connection with the transactions contemplated by this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual representations, warranties, covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby expressly

acknowledged by Seller and Purchaser, and intending to be legally bound by this Agreement, the Parties agree as follows:

# ARTICLE I
## PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES

Section 1.1    <u>Purchase and Sale</u>.

(a)    Pursuant to Sections 102, 105, 363 and 365 of the Bankruptcy Code, upon the terms and subject to the conditions contained in this Agreement, at the Closing, Seller shall sell, assign, transfer and convey, or cause to be sold, assigned, transferred and conveyed, to Purchaser, and Purchaser shall purchase and accept all of Seller's right, title and interest in, to the Assets (as defined in Section 8.1 of this Agreement), free and clear of any and all liens, claims, and encumbrances (other than the Assumed Liabilities). EXCEPT FOR THOSE WARRANTIES EXPRESSLY SET FORTH IN ARTICLES II AND VIII OF THIS AGREEMENT, SELLER EXPRESSLY DISCLAIMS AND NEGATES AND PURCHASER HEREBY WAIVES, ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE. WITHOUT LIMITING THE FOREGOING, EXCEPT FOR THOSE WARRANTIES EXPRESSLY SET FORTH IN ARTICLES II AND VIII OF THIS AGREEMENT, THE ASSETS SHALL BE CONVEYED PURSUANT HERETO WITHOUT ANY WARRANTY OR REPRESENTATION WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO THE QUALITY, CONDITION, SIZE, WEIGHT, SERVICEABILITY, CONFORMITY TO SAMPLES OR ANY OTHER ASPECT OF THE AUTOMOBILES, FIXTURES, EQUIPMENT OR OTHER PERSONAL PROPERTY INCLUDED AMONG THE ASSETS, ALL OF WHICH SHALL BE CONVEYED TO PURCHASER AS IS, WHERE IS, AND WITH ALL FAULTS AND DEFECTS AND IN THEIR PRESENT CONDITION AND STATE OF REPAIR, SUBJECT TO REASONABLE WEAR AND TEAR BETWEEN THE DATE HEREOF AND CLOSING, AND WITHOUT ANY WARRANTIES WHATSOEVER OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. PURCHASER ACKNOWLEDGES THAT THIS WAIVER IS CONSPICUOUS.

Section 1.2    <u>Consideration</u>.

(a)    The aggregate consideration for the purchased Assets (the "Purchase Price") shall be equal to Nine Hundred Fifty-Five Thousand ($955,000) Dollars in readily available funds as allocated below:

      (i)    $800,00 for the Assets as defined in Section 8.1 other than he Respect Adversary Proceeding as defined in Section 8.1;

      (ii)    $155,000 for the Trustee's right, title and interest in and to all causes

of action against Respect Auto Queens I, LLC, a codefendant in the Respect Adversary Proceeding. It is understood that the $155,000 is inclusive of all funds agreed to be paid under the pending Stipulation and Order resolving Debtors Motion for a Temporary Restraining Order; and Preliminary Injunction (the "Stipulation").

(b)     Upon execution and delivery of this Agreement by the Parties, Purchaser shall deposit an amount equal to Eighty Thousand ($80,000.00) Dollars (the "Deposit") into escrow with the Trustee by certified check or wire transfer of immediately available funds to an account designated by the Trustee in writing, of which the Trustee is already currently holding Fifty Thousand ($50,000.00) Dollars under the Bid Procedures and Sale Order.

(c)     At the Closing, Purchaser shall pay the Purchase Price by (i) the Trustee releasing from escrow, and paying to Seller, the Deposit, (ii) receiving a credit for Ninety Five Thousand ($95,000.00) paid pursuant to the Stipulation and (iii) paying to Seller the sum of Seven Hundred and Eighty Thousand ($780,000.00) Dollars, by certified check or wire transfer of immediately available funds to an account designated by Trustee in writing at least two (2) Business Days prior to the Closing Date.

Section 1.3 <u>Allocation; IRS Filings</u>. The Purchase Price shall be allocated, for Tax purposes, among the purchased Assets in accordance with Schedule **1.3** attached hereto and made a part hereof (the "Allocation Statement"). The Parties hereby agree that they and their respective Affiliates will (i) be bound by the Allocation Statement, (ii) act in accordance with the Allocation Statement in connection with the preparation, filing and audit of any Tax Return (including, without limitation, in the filing of IRS Form 8594 and any corresponding other Tax forms), and (iii) take no position inconsistent with the Allocation Statement for any Tax purpose (including, without limitation, in any audit, judicial or administrative proceeding).

Section 1.4     <u>Transfer Taxes</u>. To the extent does not exempt under the Bankruptcy Code, all Transfer Taxes arising out of, in connection with, or attributable to, the transactions effected pursuant to this Agreement shall be borne and paid exclusively by Purchaser. Purchaser shall prepare and timely file all relevant tax returns required to be filed in respect of such Transfer Taxes and shall timely pay such Transfer Taxes.

Section 1.5     <u>Assignment and Assumption of Contracts</u>.     Seller will not assume any contracts or leases, and Purchaser shall not receive an assignment of any contracts or leases.

Section 1.6     <u>The Closing</u>. The closing (the "Closing") of the transactions contemplated by this Agreement shall be held at the offices of Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554. The Closing shall be held no later than the second Business Day following the day after the conditions set forth in <u>Article V</u> and <u>Article VI</u> of this Agreement shall have either been fully satisfied

or waived, or on such other date as the parties hereto agree in writing (the "Closing Date"). Notwithstanding anything to the contrary set forth in this Agreement, Purchaser reserves the right, in its sole discretion, to cancel this Agreement and have the Deposit immediately returned to it if the Closing does not occur on or before September 16, 2019, time being of the essence.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser, as of the date hereof, as follows:

Section 2.1    Entity.  The Debtor is, to the Trustee's knowledge, a limited liability company.

Section 2.2    Authority.    Subject to the approval of the Bankruptcy Court, including the entry of the Sale Approval Order by the Bankruptcy Court:

(a)    Seller has the requisite power and authority to execute, deliver and perform its obligations under this Agreement and each instrument of conveyance and other document to be executed and delivered by Seller pursuant to this Agreement (all such instruments and documents, the "Seller Ancillary Documents");

(b)    the execution and delivery of this Agreement by Seller, and the performance by Seller of its obligations hereunder and under each Seller Ancillary Document and the consummation by Seller of the transactions contemplated hereby and thereby, have been duly authorized and no other action on the part of Seller is necessary to authorize the execution, delivery and performance of this Agreement or the Seller Ancillary Documents or the consummation of the transactions contemplated hereby or thereby; and

(c)    this Agreement has been duly and validly executed and delivered by Seller and constitutes, and the Seller Ancillary Documents (when executed and delivered by Seller) shall constitute, a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, subject (in each case) to applicable bankruptcy, moratorium and similar laws affecting creditors' rights and remedies generally and as to enforceability, to general principles of equity, and assuming that this Agreement and each of the agreements, documents and instruments contemplated hereunder constitute the valid and binding agreements of the other parties hereto and/or thereto.

Section 2.3    Broker. MYC & Associates, Inc., retained pursuant to Court Order dated April 24, 2019 and no other agent, broker, finder or investment or commercial banker, or other Person or firm engaged by Trustee in connection with the negotiation, execution or performance of this Agreement or the transactions contemplated by this Agreement, is or will be entitled to any brokerage or finder's or similar fees or commissions as a result of this Agreement or such transactions.  Broker shall be paid entirely by Seller pursuant to a separate agreement.

Section 2.4    <u>Assets and Excluded Assets</u>.  The assets and excluded assets as defined in Article VIII of this Agreement will remain the same on the Closing Date.

Section 2.5    <u>Insurance</u>. All insurance relating to the Business is in full force and effect and will continue to be in full force and effect up to and including the Closing Date. Seller will not assign and Purchaser will not assume any contracts or agreements relating to such insurance maintained by Seller.  Seller will cooperate with Purchaser in Purchaser's efforts to obtain any and all insurance subsequent to Closing.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller, as of the date hereof, the following:

Section 3.1    <u>Organization</u>.  Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of New York and has the full corporate right, power and authority to own, lease and operate all of its properties and assets and to carry out its Business as it is presently conducted.

Section 3.2    <u>Authority</u>.  Subject to entry of the Sale Approval Order by the Bankruptcy Court:

(a)    Purchaser has all requisite company power and authority to execute, deliver and Perform its obligations under this Agreement and each instrument of conveyance and other document to be executed and delivered by Purchaser pursuant to this Agreement (the "Purchaser Ancillary Documents");

(b)    the execution, delivery and performance of its obligations under this Agreement and each Purchaser Ancillary Document by Purchaser have been duly and validly authorized and approved by all necessary company action on the part of Purchase and no other corporate action on the part of Purchaser is necessary to authorize the execution, delivery and performance of this Agreement or the Seller Ancillary Documents or the consummation of the transactions contemplated hereby or thereby; and

(c)    this Agreement has been duly and validly executed and delivered by Purchaser and constitutes, and the Purchaser Ancillary Documents (when executed and delivered by Purchaser) shall constitute, the legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject (in each case) to applicable bankruptcy, moratorium and similar laws affecting creditors' rights and remedies generally and as to enforceability, to general principles of equity, and assuming that this Agreement and each of the agreements, documents and instruments contemplated hereunder constitute the valid and binding agreements of the other parties hereto and/or thereto.

Section 3.3     Consents and Approvals; No Violations.  Subject to entry of the Sale Approval Order by the Bankruptcy Court, the execution, delivery and performance of this Agreement by Purchaser will not (with or without the giving of notice or the passage of time, or both) (a) violate any applicable provision of law, (b) violate, or require any consent under, the Organizational Documents of Purchaser, (c) require any consent under or constitute a default (or give rise to any right of termination, amendment, cancellation or acceleration) under any agreement, indenture, mortgage, deed of trust, lease, license, or other instrument to which Purchaser is a party or by which Purchaser is bound, or any material permit or license held by Purchaser, except for the Volkswagen Approval (defined below), or (d) require any consent, or approval by, notice to, or registration with, any governmental entity.

Section 3.4  Legal Proceedings.  There is no Order or legal proceeding pending or, to the knowledge of Purchaser, threatened against or affecting Purchaser that individually or when aggregated with one or more other actions would have a material adverse effect on Purchaser's ability to perform this Agreement and each Purchaser Ancillary Documents or any material aspect of the transactions contemplated by this Agreement.

Section 3.5  Sufficient Funds.  Purchaser has available sufficient funding to enable Purchaser to consummate the purchase of the Assets from Seller on the terms set forth in this Agreement, to meet the operating capital and other respective requirements of Volkswagen Group of America, Inc. ("VOA") and Volkswagen Credit, Inc. (collectively, "Volkswagen"), all as they are presently known to Purchaser, and to otherwise to perform all of Purchaser's obligations under this Agreement and each Purchaser Ancillary Agreement.

Section 3.6     Inspection of Acquired Assets and Business.   Except as expressly provided in this Agreement, Purchaser has inspected and agrees to accept, all of the Assets and the Premises "as is", "where is" and "with all faults" in their present condition (subject only to ordinary wear and tear).  Purchaser expressly acknowledges and agrees that neither Seller, nor any other person or entity having any connection with Seller has made any representations or warranties with respect to any matter or thing pertaining to the Assets, the Business, or the Premises, including with respect to the condition of or the working order of any of the Assets or the condition of the Premises, except as specifically set forth in this Agreement. Purchaser acknowledges and agrees that it is not relying upon any representations or warranties of Seller or any other person or entity except the representations specifically set forth in this Agreement.

Section 3.7     VOA Approval.  Purchaser shall use commercially reasonable efforts to cause VOA to award it a new dealer agreement to do business at a location approved by VOA (a "Volkswagen Approved Location"), and Purchaser knows of no reason why it should not be approved by VOA and be bound by the terms and conditions of the Bid Procedures and Sale Order annexed hereto as "Exhibit A".

Section 3.8    <u>No Brokers or Finders</u>.    Except as set forth in Section 2.3, no agent, broker, finder or investment or commercial banker, or other Person or firm engaged by Purchaser in connection with the negotiation, execution or performance of this Agreement or the transactions contemplated by this Agreement, is or will be entitled to any brokerage or finder's or similar fees or commissions as a result of this Agreement or such transactions

## ARTICLE IV TERMINATION

Section 4.1 <u>Termination</u>. This Agreement may be terminated at any time prior to the Closing:

(a)    By mutual written agreement executed by Seller and Purchaser.

(b)    By Purchaser, by notice to Seller:

(i)    if Seller declares that a Person other than Purchaser is the highest or best offeror;

(ii)    if the Bankruptcy Court has not entered the Sale Approval Order;

(iii)    if an order, decree or ruling is issued, or any other action by a governmental entity is taken, to restrain, enjoin or otherwise prohibit the transfer of the Assets contemplated by this Agreement;

(iv)    if the VOA approval as described in Section 3.7 is not obtained by September 16, 2019;

(v)    if the conditions of Section 1.5(b) are not satisfied;

(vi)    if the contemplated transaction does not close by September 16, 2019, time being of the essence.

(c)    By Seller, by notice to Purchaser, if there has been a material breach by Purchaser of any representation, warranty or covenant contained in this Agreement which (x) has rendered the satisfaction of any condition to the obligation of Seller to consummate the transactions contemplated in this Agreement impossible, or is not curable or, if curable, has not been cured within ten (10) days following receipt by Purchaser of written notice of such breach from Seller, and (y) has not been waived by Seller;

(d)    By Seller, by notice to Purchaser:

(i)    if Seller declares that a Person other than Purchaser is the highest or best offeror;

(ii)    if the Bankruptcy Court has not entered the Sale Approval Order; or

(iii)    if an order, decree or ruling is issued, or any other action by a Governmental Entity is taken, to restrain, enjoin or otherwise prohibit the transfer of the Assets contemplated by this Agreement.

Section 4.2 <u>Deposit.</u>  Upon any termination of this Agreement for any reason other than pursuant to Section 4.l (c) Purchaser shall have the right to immediate return of the Deposit at the Closing. Seller hereby acknowledges that the obligation to return the Deposit (to the extent due hereunder) shall survive the termination of this Agreement. Upon termination of this Agreement pursuant to Section 4.l(c), the Deposit shall be immediately paid to Seller as and for liquidated damages.

## ARTICLE V
## CONDITIONS TO PURCHASER'S OBLIGATIONS

Each and every obligation of Purchaser to consummate the transactions described in this Agreement shall be subject to the fulfillment (or, with respect to any obligation other than the Bankruptcy Court's issuance of the Sale Approval Order, waiver thereof by Purchaser in writing) on or before the Closing, of the following conditions precedent:

Section 5.1 <u>Seller's Closing Deliveries</u>. Seller shall have delivered, or caused to be delivered, to Purchaser at the Closing each of the following:

(a)    one or more bills of sale or instruments of assumption and assignment (reasonably acceptable to Purchaser), executed by Seller;

(b)    a copy of the Sale Approval Order;

(c)    a copy of Seller's resignation or termination of its Volkswagen Dealer Agreement dated as of June 23, 2016 ("Seller's Dealer Agreement"), in VOA's then standard form, which shall be effective concurrent with and contingent upon (i) the execution by VOA of a new Dealer Agreement with Purchaser and (ii) upon the closing of this Agreement which shall also include any release demanded by VOA; and

(d)    any other documents reasonably requested by Purchaser in order to effectuate the transfer of the Assets.

Section 5.2    <u>Representations and Warranties True</u>.  The representations and warranties of Seller contained in this Agreement shall have been true on the date of this Agreement and shall be true in all material respects on the Closing Date with the same effect as though such representations were made as of such date.

Section 5.3    <u>Performance</u>. Seller shall have performed and complied with all covenants and obligations required by this Agreement to be performed or complied with by it prior to or at the Closing.

Section 5.4    _Purchaser Approved as Dealer_.  At or prior to Closing, VOA shall have approved Purchaser to be the holder of a valid dealer agreement for Volkswagen brand   motor vehicles to conduct its business operations at an Approved Location ("Volkswagen Approval").

Section 5.5    _No Exercise of Right to First Refusal_.  VOA shall not have exercised its right to first refusal under the Seller's Dealer Agreement.

Section 5.6    _Bankruptcy Court Approval_.  The Bankruptcy Court shall have entered the Sale Approval Order substantially in the form attached hereto as _Exhibit A_ (subject to non-- material changes only) and provided such other relief as may be necessary or appropriate to allow the consummation of the transactions contemplated  by this Agreement.

Section 5.7    _No Legal Proceedings or Injunction_. There shall not be in effect  or pending, at the Closing Date, any injunction or other binding Order of any court or other tribunal having or jurisdiction over Purchaser that prohibits the purchase of the Assets by Purchaser, or any legal proceeding that seeks such an injunction or Order.

Section 5.8    _Licenses and Approvals for Purchaser to Operate_.  Purchaser shall have obtained, after reasonable commercial efforts, all governmental licenses, approvals and permits required to operate the Business in the ordinary course.

## ARTICLE VI
## CONDITIONS TO SELLER'S OBLIGATIONS

Each and every obligation of Seller to consummate the transactions described in this Agreement shall be subject to the fulfillment (or, with respect to any obligation other than Bankruptcy Court approval of the Sale Scheduling and Procedures Order and Sale Approval Order, the waiver thereof by Seller in writing) on or before the Closing, of the following conditions precedent:

Section 6.1 _Purchaser's Closing Deliveries_. Purchaser shall deliver, or cause to be delivered, as applicable, to Seller, at the Closing each of the following:

(a)      the Assignment and Assumption Agreements (for the contracts and leases listed on Schedule I) executed by Purchaser;

(b)      such other deliveries as Purchaser may be required to make on the Closing pursuant to any other provision of this Agreement; and

(c)      the balance of the Purchase Price pursuant to Section 1.2(c).

Section 6.2    _Representations and Warranties_. The representations and warranties of Purchaser contained in this  Agreement shall have been true on the date of this

Agreement and shall be true in all material respects on the Closing Date with the same effect as though such representations were made as of such date.

Section 6.3    <u>Performance</u>. Purchaser shall have performed and complied in all material respects with all covenants and obligations required by this Agreement to be performed or complied with by it prior to or at the Closing.

Section 6.4 <u>Bankruptcy Court Approval</u>. The Bankruptcy Court shall have entered the Sale Approval Order substantially in the form attached hereto as <u>Exhibit A</u> (subject to non-material changes only) and provided such other relief as may be necessary or appropriate to allow the consummation of the transactions contemplated by this Agreement.

Section 6.5 <u>No Legal Proceedings or Injunction</u>. There shall not be in effect or pending, at the Closing Date, any injunction or other binding order of any court or other tribunal having jurisdiction over Seller that prohibits the sale of the Assets to Purchaser, or any legal proceeding that seeks such an injunction or Order.

**ARTICLE VII**
**BANKRUPTCY  MATTERS**

Section 7.1    <u>Sale Scheduling and Procedures Order</u>.  The Trustee has sought and the Bankruptcy Court has entered the Order Approving Sale Procedures and Terms for the Sale of Substantially  All  of  the  Debtor's  Assets,  Scheduling  A  Hearing  for  Approval of  the   Sale  and  Granting  Other  Related   Relief  (the  "Sale  Scheduling  and  Procedures Order").

Section 7.2    <u>Sale Approval Order</u>. The Trustee shall seek entry of the sale approval order ("Sale Approval Order") containing, inter alia, the following provisions:

(i)    a finding that the notice of the Sale Approval Hearing and Sale Procedures was proper and sufficient under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Bankruptcy Court's Local Bankruptcy Rules, that Seller and Purchaser entered into this Agreement in good faith, that the Purchase Price (including the Assumed Liabilities) constitutes fair value in consideration for the Assets, and determining that Purchaser is a good faith purchaser entitled to the protections afforded by Section 363(m) of the Bankruptcy Code with respect to the transactions contemplated by this Agreement and the Assets;

(ii)    authorizing Seller to transfer to Purchaser all right, title, privilege and interest of Seller in and to the Assets, free and clear of any and all liens, claims, liabilities and encumbrances; and

Section 7.3    <u>Reservation of Rights</u>.  Notwithstanding anything contained in this Agreement to the contrary, the Trustee reserves any and all rights that he may have under,

or pursuant to, Section 463(2) of the New York State Vehicle and Traffic Law.

## ARTICLE VIII
## DEFINITIONS AND RULES OF CONSTRUCTION

Section 8.1    <u>Definitions</u>. As used in this Agreement, the following terms shall have the meanings set forth below, unless the context otherwise requires:

"Accounts Receivable" means all of Seller's trade accounts receivable, and all notes receivable or other evidences of indebtedness payable to Seller, created or arising in respect of goods sold and delivered or services performed by or on behalf of Seller on or prior to the Closing Date and all defenses, claims, counterclaims and cross-claims with respect to any right of setoff or recoupment asserted with respect to such accounts receivable.

"Assets" means, other than the Excluded Assets, all of Seller's right, title and interest in and to the tangible and intangible assets, and properties owned by Seller of every kind, character and description, whether accrued, contingent or otherwise, existing as of the Closing (which assets comprise substantially all of Seller's assets, properties and rights). Without limiting the generality of the foregoing, the Assets shall include:

(a)    all inventory of supplies located at the Premises ("Inventory");

(b)    all equipment located at the Premises not subject to leases or contracts;

(c)    all special service tools and parts which are recommended by Volkswagen that are especially designed for servicing Volkswagen brand motor vehicles, and the interior and exterior Volkswagen brand signage, any marketing kiosk(s), display cabinets specifically designed for Volkswagen products;

(d)    all Volkswagen films, graphics, point of sale brochures and marketing materials which Seller then has on hand and all shop, service and parts reference manuals for Volkswagen products, and all Volkswagen customer owner lists and customer service records for Volkswagen vehicles;

(e)    all customer and prospect lists and information used by Seller connection with the Business (the "Consumer Information");

(f)    all books and records used by Seller in connection with the Business;

(g)    all intellectual property, URLs, telephone and fax numbers utilized by Seller in connection with the Business, and all goodwill of the Business, in each case, to the extent assignable.

(h)    all furniture and fixtures; and

(i)    all right and title to the claims against Respect Auto Queens I LLC contained in the Adversary Proceeding entitled *Richard J. McCord Esq., as Chapter 11 Trustee plaintiff*

*v. Northern Broadway Auto, LLC, Nikolaos Letsios, Valley Auto Show, LLC and Respect Auto Queens I LLC* Adv Pro No 19-01045 (the "Respect Adversary Proceeding").

"Bankruptcy Code" means title 11 of the United States Code, *as* amended and in effect from time to time.

"Business Day" means a day that is a day of the year on which banks are not required or authorized by law to close in New York, New York.

"Debtor Contracts" mean any agreement, contract, plan, undertaking, instrument, note, bond, mortgage, indenture, deed of trust, loan, credit agreement, franchise concession, permit, license, lease, purchase order, sales order or other similar commitment, obligation, arrangement or understanding, whether written or oral, between the Debtor and any other Person.

"Excluded Assets" means all of Seller's right, title and interest in and to the following assets and the books and records relating thereto; provided, however, that Seller shall make available to Purchaser upon request any such books and records relating to any of the Assets or the Business:

(a)     all cash and cash equivalents;

(b)     all Debtor contracts, including, but not limited to, executory contracts and unexpired leases of non-residential real property;

(c)     all Accounts Receivable;

(d)     all of the Volkswagen and non-Volkswagen brand vehicles;

(e)     all new, unopened parts;

(f)     all equipment that is subject to lease obligations or any other secured claims;

(g)     all minute books, stock records and corporate seals;

(h)     all books and records that Seller is required by law or which the Trustee reasonably deems advisable to retain in his possession and all personnel records with respect to employees; provided, however, that Seller shall make such records available to Purchaser upon request by Purchaser from and after the Closing;

(i)     the Excluded Avoidance Actions and any related claims or causes of action under applicable non-bankruptcy law arising out of the same set of facts and the proceeds thereof, other than the claims against Respect Auto Queens I LLC contained in the Respect Adversary Proceeding;

(j)     any other causes of action and claims of any kind including but not limited

to, damages, breach of contract, breach of fiduciary duty and/or waste and mismanagement, preferential payments, fraudulent conveyance under applicable laws, other than the claims against Respect Auto Queens I LLC contained in the Respect Adversary Proceeding;

(k)     all rights under insurance policies to the extent relating to claims for losses related exclusively to any Excluded Asset or otherwise non-assignable as a matter of law;

(l)     all shares of capital stock of the Seller;

(m)     all insurance policies, contracts and coverages relating to Assets not transferred to Purchaser pursuant to this Agreement;

(n)     all employee benefit plans;

(o)     all rights to refunds of or credits for Taxes of Seller and any records relating to Taxes of Seller;

(p)     all (i) causes of action and claims that may be asserted against Purchaser, and (ii) rights of Seller, in each case, under this Agreement or any other agreements or instruments executed and delivered in connection with this Agreement or the transactions contemplated hereby or thereby;

(q)     all rights to refunds of or credits under any bond, license or worker's compensation policy; and

(r)     All assets of Northern Broadway Auto, LLC and the Debtor's rights to those assets.

"Excluded Avoidance Actions" means all claims and causes of action arising under Sections 542 through 553 of the Bankruptcy Code except as set forth above.

"Knowledge of Trustee," "Trustee's Knowledge" or like words shall mean the Trustee's actual knowledge based solely upon information obtained from the Debtor's officers, attorneys or accountants, without independent verification.

"Order" means any judgment, order, writ, decree, injunction, award, ruling or other determination whatsoever of any governmental entity or any other entity or body (including any arbitration or similar panel) whose finding, ruling or holding is legally binding or is enforceable as a matter of right (in any case, whether preliminary or final).

"Organizational Documents" means with respect to any corporation or other business organization, the certificate of incorporation, by-laws or similar organizational documents of such business organization.

"Person" means any natural person, corporation, general partnership, limited

partnership, limited liability company, proprietorship, joint venture, trust, association, union, entity or other form of business organization or any governmental entity whatsoever.

"Taxes" means (a) all taxes, charges, fees, duties, levies or other assessments and other charges of any kind, including all net income, gross income, gross receipts, sales, use, ad valorem, transfer, franchise, profits, payroll, employment, social security, unemployment, excise, estimated, stamp, occupancy, occupation, property or other similar taxes, including any interest or penalties thereon, and additions to tax or additional amounts imposed by a Governmental Entity or (b) all liability for the payment of any taxes, interest, penalty, addition to tax or like additional amount resulting from the application of Treasury Regulation § 1.1502-6 or comparable Law.

"Transfer Taxes" means transfer, recording, stamp or similar Taxes including, without limitation, any and all county, state or other real property transfer taxes.

Section 8.2    Rules of Construction.    The definitions in Section 8.1 shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "but not limited to." "Or" is disjunctive but not necessarily exclusive. All references herein to Articles, Sections, Exhibits and Schedules shall be deemed references to Articles and Sections of, and Exhibits and Schedules to, this Agreement unless the context shall otherwise require. All Exhibits and Schedules attached to this Agreement shall be deemed incorporated herein by reference as if fully set forth herein. Words such as "herein," "hereof," "hereto," "hereby" and "hereunder" refer to this Agreement and to the Schedules and Exhibits, taken as a whole. Except as otherwise expressly provided herein: (a) any reference in this Agreement to any agreement shall mean such agreement as amended, restated, supplemented or otherwise modified from time to time; (b) any reference in this Agreement to any law shall include corresponding provisions of any successor law and any regulations and rules promulgated pursuant to such law or such successor law and shall mean such law as amended, restated, supplemented or otherwise modified from time to time. Neither the captions to Sections or subdivisions thereof shall be deemed to be a part of this Agreement.

## ARTICLE IX
## MISCELLANEOUS

Section 9.1    Entire Understanding, Waiver, Etc.    This Agreement (including the Exhibits and the Schedules attached hereto) represents the entire understanding and agreement of the Parties with respect to the subject matter hereof. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement or waiver is sought. A waiver by either Party of any of the terms or conditions of this Agreement, or of any breach thereof, shall not be deemed a waiver of such term or condition for the future, or of any other term

or condition, or of any subsequent breach.

Section 9.2    <u>Severability</u>. If any provision of this Agreement or the application of such provision shall be held by a court of competent jurisdiction to be unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

Section 9.3    <u>Notices</u>.    All notices, requests, demands and other communications (collectively, "Notices") given or made pursuant to this Agreement shall be in writing and shall be deemed to have been duly given if sent by telecopy or overnight courier, postage and fees prepaid, or otherwise actually delivered to the following addresses:

If to Seller:

Northern Boulevard Automall, LLC
c/o Richard J. McCord, Esq., Chapter 11 Trustee
Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
Direct 516.296.7801
Email: rmccord@certilmanbalin.com

with a copy (which shall not constitute Notice) to:

Robert Nosek, Esq.
Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
Direct 516.296.7171
Email: rnosek@certilmanbalin.com


If to Purchaser:

Respect Auto Queens II LLC.
c/o Harrison Gray
56 Leonard Street #27AE
New York,  New York 10013

with a copy (which shall not constitute Notice) to:

Matthew G. Roseman, Esq.
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

Section 9.4    <u>Assignment</u>. Neither this Agreement nor any rights or obligations

under it are assignable, except to an affiliate of Purchaser.

Section 9.5    Parties in Interest.  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and permitted assigns.

Section 9.6    Counterparts and Facsimile Signatures.  This Agreement may be executed in two or more counterparts and by facsimile or electronic pdf counterpart signatures, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

Section 9.7    Interpretation.  Since each Party and counsel to each Party has participated in the drafting of this Agreement, this Agreement shall not be interpreted against one Party or the other based upon who drafted any provision of this Agreement.

Section 9.8    Waiver of Jury Trial.

EACH PARTY HEREBY WAIVES AND AGREES TO WAIVE ITS RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OF ANY KIND OR TYPE, BASED UPON OR ARISING OUT OF THIS AGREEMENT. EACH PARTY ACKNOWLEDGES THAT THIS WAIYER IS A MATERIAL INDUCEMENT TO ENTER INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN THE PARTIES' RELATED FUTURE DEALINGS. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIYER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS AGREEMENT.

Section 9.9    Survival of Representations and Warranties.  All representations and warranties made by the Purchaser in this Agreement herein shall survive the Closing until the expiration of the applicable statute of limitations. All representations and warranties made by Seller in this Agreement shall expire at the Closing.

Section 9.10    Calculation of Time Periods. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

Section 9.11    Governing Law; Jurisdiction. This Agreement shall be governed by and construed and enforced in accordance with the law of the State of New York applicable to contracts negotiated, entered into and to be performed solely in that State, without regard to the choice or conflicts of law principles of such State and, to the extent applicable, by and in accordance with the Bankruptcy Code. During the pendency of the Bankruptcy Case, the Bankruptcy Court shall have exclusive jurisdiction over the parties hereto and over any disputes, claims or matters relating to or arising in connection with this Agreement. After

the termination of the Bankruptcy Case, the state and federal courts located in the Counties of Nassau and Suffolk, State of New York, shall have jurisdiction over the parties hereto and over any disputes, claims, suits, proceedings or actions relating to or arising in connection herewith. The parties hereto consent to the jurisdiction of the Bankruptcy Court and such other courts pursuant to this Section 9.11.

Section 9.12     Expenses. Each of the Parties shall bear its own expenses incurred in connection with this Agreement and each other document or certificate pursuant to this Agreement, including Seller Ancillary Documents and Purchaser Ancillary Documents.

Section 9.13     Books and Records. From and after the Closing Date, Purchaser shall provide Seller with such non-privileged information in its possession as may be reasonably requested by Seller for periods prior to the Closing Date to enable Seller to prepare Tax Returns and other financial reports and otherwise in connection with further disposition of the Bankruptcy Case.

Section 9.14     Press Releases. At and prior to the Closing, neither Party shall issue any press release or make any public announcement relating to the subject matter of this Agreement without the prior written approval of the other Party, which approval shall not be unreasonably withheld, except that either Party may make any announcement required by law or by order of the Bankruptcy Court after notice to the other Party and consultation with such other Party. After the Closing Date, no press releases or public announcement related to this Agreement or the transactions contemplated in this Agreement, or other announcements to the employees, customers, carriers, vendors, clients or suppliers of the Business, shall be issued without Purchaser's prior written consent.

Section 9.15     Remedies. Each of Seller and Purchaser acknowledges and agrees that the other Party would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached. Accordingly, each of the Parties agrees that the other Party shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having jurisdiction over the Parties and the matter, in addition to any other remedy to which they may be entitled, at law or in equity.

Section 9.16     Consumer Information Privacy Protection.  Purchaser acknowledges and agrees that with regard to the Consumer Information, it shall, immediately upon the Closing, adopt and continue to abide by the Seller's privacy policy in place as of the date of this Agreement, a copy of which policy is annexed hereto as Exhibit B.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement on the day and year first above written.

PURCHASER:

Respect Auto Queens II LLC
By:____/s/Harrison Gray_____
Name:  Harrison Gray
Title:    President

SELLER:

NORTHERN BOULEVARD
AUTOMALL, LLC


By:____/s/Richard McCord____
Name:  Richard McCord
Title:    Trustee


 The undersigned agrees that it shall not unreasonably withhold or delay its approval of the Volkswagen Approval, as that term is defined in Section 5.4, above.

VOLKSWAGEN GROUP OF AMERICA, INC.


_____
Name:
Title:

**EXHIBIT A**

**BID PROCEDURES AND SALE ORDER**

**EXHIBIT B**

**DEBTOR'S CONSUMER INFORMATION PRIVACY POLICY**

**SCHEDULE 1.3 ALLOCATION SCHEDULE**