UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

NORTHERN BOULEVARD AUTOMALL, LLC
d/b/a LONG ISLAND CITY VOLKSWAGEN,

Debtor.

Chapter 11

Case No.: 19-41348-nhl

---------------------------------------------------------------X

### STIPULATION AND ORDER BETWEEN VW CREDIT, INC. AND THE CHAPTER 11 TRUSTEE REGARDING THE SALE OF THE DEBTOR'S ASSETS AND SALE PROCEEDS CARVE-OUT FOR BENEFIT OF TRUSTEE AND THE TRUSTEE'S PROFESSIONALS

**WHEREAS**, on March 7, 2019 (the "Petition Date"), Northern Boulevard Automall LLC d/b/a Long Island City Volkswagen (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

**WHEREAS**, on April 9, 2019, the Order Authorizing the Appointment of Chapter 11 Trustee was entered; and

**WHEREAS,** on April 11, 2019, Richard J. McCord (the "Trustee") was appointed the Chapter 11 Trustee of the Debtor's estate and the Order Approving the appointment was entered; and

**WHEREAS**, the Debtor is a limited liability company with its principal place of business as of the Petition Date located at 56-15 Northern Boulevard, Woodside, New York, with its service center located at 33-20 55th Street, Woodside, New York. The Debtor is an authorized Volkswagen dealership selling both new and used vehicles and provides maintenance and services on vehicles of, as well as sells parts to its customers and local independent repair shops; and

6945135.3

**WHEREAS**, on or about June 22, 2016, the Debtor entered into a Master Loan and Security Agreement with attached schedules ("MLSA") with VW Credit, Inc. ("VCI") under which VCI agreed to provide, in part, secured wholesale inventory floor plan financing to the Debtor for its purchase or financing of, among other things, automobiles held by the Debtor as inventory for retail sale or lease to the public; and

**WHEREAS,** pursuant to the MLSA, on June 22, 2016, VCI also provided the Debtor with a capital loan in the original amount of $650,000.00 ("Capital Loan"); and

**WHEREAS,** to secure its obligations under the MLSA, the Debtor granted VCI a security interest in all of the Debtor's assets, including new and used motor vehicle inventory, whether specifically financed by VCI or not, parts inventory, furniture, fixtures, equipment, investment property, accounts, contact rights, general intangibles, rights to receive payments and credits from manufactures and all of the proceeds of the foregoing, all as more particularly described in the MLSA (the "Collateral"); and

**WHEREAS**, VCI has properly perfected its security interest in the Collateral by filing financing statements with the New York Secretary of State as required by New York law; and

**WHEREAS**, the Debtor's assets consist of, primarily the Dealership, and certain related assets used in the operation of the Dealership (the "Assets"); and

**WHEREAS,** pursuant to the proof of claim filed by VCI on June 3, 2019, VCI holds a secured claim against the Debtor's Assets and is owed the sum of $7,559,603.32; and

**WHEREAS**, VCI believes that the value of the Assets will be maximized by the Trustee's sale thereof in the Debtor's bankruptcy case. Based upon the Debtor's apparent lack of equity in the Assets, the Trustee has agreed to administer the Assets and undertake the sale pursuant to Bankruptcy Code §363 only if the VCI agrees to an appropriate carve-out of VCI's

interest in the Assets and the proceeds thereof, so that funds are assured for payment of Chapter 11 administrative expenses including, the Trustee's statutory commissions and professional fees and expenses related to preserving and disposing of the Assets; and

**WHEREAS**, on May 16, 2019, the Court entered the Interim Order (i) Authorizing and Approving; (A) Bid Procedures; and (B) Form and Manner of Notices; and (ii) Scheduling an Action and Sale Hearing; and

**WHEREAS**, on August 10, 2019, the Order Confirming the Chapter 11 Trustee's Sale of Certain of the Debtor's Operating Assets and its "Blue Sky" Value to the Successful Bidder was entered, which confirmed the sale of the Debtor's assets to the highest bidder, Respect Auto Queens II LLC, as assignee of HG Respect Bronx Holding Corp ("Respect"), in the amount of $955,000.00 ("Sale Confirmation Order") with $800,000.00 of that allocated to the Assets under a fully executed asset purchase agreement (the "APA") by and between the Trustee and Respect; and

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS**:

1. The recitals set forth above (the "Recitals") are incorporated herein by this reference.

2. VCI agrees to a carve-out pursuant to 506(c) of the Bankruptcy Code (the "Sale Proceeds Carve-Out") from the sale proceeds of the sale of the Assets of the Estate to Respect, for payment of the following Chapter 11 professional and administrative expenses, as and when approved and directed by the United States Bankruptcy Court: (a) compensation of fees and expenses to Certilman Balin Adler & Hyman, LLP, counsel to the Trustee, in the amount of $181,000.00, said payment being applied towards the total amount of funds awarded to

Certilman for fees and expenses in the amount of $289,158.74 (20% of which is currently subject to holdback) pursuant to Court Order dated September 6, 2019 (the "Awarded Fees"); (b) reimbursement to Richard J. McCord, Chapter 11 Operating Trustee, in the amount $19,000.00, for funds advanced by the Trustee to the Debtor to fund payroll on August 15, 2019; (c) compensation of fees and expenses to MYC & Associates, Inc., as auctioneer to the Trustee, in the amount of $64,000.00; (d) compensation of fees and expenses to Lucy L. Thomson, Consumer Privacy Ombudsman to the Trustee, in the amount of $7,960.00; and (e) payment of the outstanding quarterly fees to the Office of the United States Trustee in the amount of $35,273.83.

3. From the closing of the sale proceeds and after the deduction of the Trustee's administrative fees and expenses as described in paragraph 2 herein, VCI will receive the remaining sum of the closing proceeds from the sale of the Debtor's Assets to Respect minus $30,000.000 received by the Trustee as part of Respect's Deposit (as defined in the APA) that VCI consented to for the use of the operating expenses.

4. The Trustee consents to VCI having an administrative claim against the estate in the amount of $74,453.96 for the lien payoffs of vehicles sold by the Debtor post-petition.

5. The Trustee agrees to turnover to VCI future funds received into the Debtor's estate from the following sources: a release by Xenex (debtor's credit card processing company) of reserve funds in the amount of $31,882.79; and any refund received from the taxing authorities pursuant to the filing of the Debtor's 2018 Federal and New York State Tax Returns, in the anticipated approximate amount of $22,500.00. These conditions are subject to the Debtor no longer operating. VCI shall, in VCI's sole discretion, credit such funds referenced in this paragraph against (i) the $30,000.00 from the Deposit that the Trustee used for continued

operations; (ii) VCI's administrative claim as referenced in Paragraph 3 above and/or to the outstanding adequate protection payments due and owing to VCI pursuant to the Court approved 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th and 18th interim cash collateral orders (the "VCI Administrative Claims").

6. The source of the compensation for the Sales Proceeds Carve-Out is solely from the sale proceeds of the sale of the Assets to Respect pursuant to the Sale Confirmation Order; it being the intent of this Stipulation that the VCI shall not be required to make any out-of-pocket payments in connection herewith nor shall VCI be responsible for any additional fees of Certilman or commission of the Trustee except to the extent set forth herein.

7. Separately, VCI and the Trustee agree that in the event that the Sales Proceeds Carve-Out does not satisfy in full the outstanding quarterly fees to the Office of the United States Trustee owed by the Estate based on disbursements from the Estate actually made through October 31, 2019 and/or there remains any outstanding sales taxes owed to any governmental unit from such sales by the Estate that are subject to such taxation, such remaining amounts may be paid by the Trustee from money in the Estate's operating account derived from the Trustee's continued operations of the Debtor in furtherance of and through the closing on the APA. Upon satisfaction of the Sales Taxes and the Quarterly Fees, and payment of the regular operating costs of the Debtor through the closing on the APA under budgets approved by VCI, plus an additional reserved amount of $7,500 for continued limited services of the Debtor's controller, VCI and the Trustee agree to split the remaining monies derived from operations of the Debtor 50/50 until the Trustee has received monies sufficient to pay the Awarded Fees in full (after deduction of the $181,000 contained in the Sales Proceeds Carve-Out), with all further operating monies paid

over to VCI, first in satisfaction of any remaining amounts owed to it for the VCI Administrative Claims and thereafter as collateral of VCI.

8. VCI and the Trustee agree that VCI shall have the right to amend its proof of claim up and until the closure of this case.

9. The Trustee hereby waives (for himself, his successors and his professionals) any other right to seek compensation from the proceeds of the sale of the Assets being sold to Respect pursuant to the Sale Confirmation Order pursuant to 506(c) of the Bankruptcy Code other than what is set forth herein.

10. Each of the undersigned represents and warrants that it has all necessary power and authority to execute and deliver this Stipulation on behalf of their respective clients and to perform their respective obligations hereunder.

11. This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, successors and assigns, including without limitation any successor or replacement trustee that may be appointed in this or in any other Bankruptcy Case with respect to the Debtor.

12. This Stipulation sets forth the entire agreement and understanding of the parties with respect to the subject matter contained herein and supersedes all prior and contemporaneous agreements, arrangements, understandings, promises and assurances relating thereto.

13. The Stipulation may be executed in counterparts with each part being part of the whole.

14. Upon execution of this Stipulation, the Trustee shall present the Stipulation to the Court to be "So Ordered".

Dated: East Meadow, New York
     October 28, 2019      **CERTILMAN BALIN ADLER & HYMAN, LLP**
                                    Counsel to the Chapter 11 Trustee

                       By:     /s/Richard J. McCord
                                  **RICHARD J. MCCORD, ESQ.**
                                  90 Merrick Avenue
                                  East Meadow, New York 11554
                                  Phone: (516) 296-7000

Dated: Albany, New York
     October 28, 2019      **DEILLY & GLASTETTER, LLP**
                                      Counsel to VW Credit, Inc.

                     By:    /s/ Joann Sternheimer
                                  **JOANN STERNHEIMER, ESQ.**
                                  8 Southwoods Blvd, Suite 207
                                  Albany, New York 12211
                                  Phone: (518) 436-0344

**SO ORDERED**: